# Exhibit A

**AMERICAN ARBITRATION ASSOCIATION**

Karen Moon,
        Claimant

v.                                                                                       Case No. 01-23-0001-3424

Coinbase Global, Inc. and Coinbase, Inc.,
        Respondents.

**AWARD OF ARBITRATOR**

I, Deborah A. Shapiro, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the parties, each represented by counsel, as submitted and as presented at an oral argument held on May 7, 2024, do hereby issue this AWARD as follows.

**Procedure**

Claimant Karen Moon filed a Demand for Arbitration on or about March 31, 2023 ("Demand"). Respondents Coinbase, Inc. and Coinbase Global, Inc. answered the Demand on or about May 2, 2023. A preliminary hearing was held on August 3, 2023.

Thereafter, the parties made various motions and requests to make motions, which were decided during the relevant time periods. On February 28, 2024, Claimant submitted a merits brief ("Cl. Brief") and exhibits ("CX"). On March 27, 2024, Respondents submitted a merits brief ("R. Brief") and exhibits ("RX"). On April 10, 2024, Claimant submitted a reply brief ("Cl. Reply") and additional exhibits ("CX"). On April 16, 2024, in response to the Arbitrator's invitation, Respondents supplemented their submission to address certain recent court decisions.

On April 29, 2024, Claimant represented that she was withdrawing her claims against Respondent Coinbase Global, Inc. ("CGI") without prejudice. On May 6, 2024, Respondents requested an award in CGI's favor or a dismissal of CGI with prejudice, which request is hereby denied.

Oral argument was held on May 7, 2024.



**Facts**

The material facts are not in dispute. Respondent Coinbase, Inc. ("Respondent") operates a centralized crypto asset exchange platform. Respondent is not registered with the Securities and Exchange Commission ("SEC") as a broker, dealer, or securities exchange, or with the State of California as a broker-dealer. Claimant opened an account with Respondent at least as early as 2018, pursuant to a user agreement, which has been amended from time to time.

Respondent listed a stablecoin known as "UST" on its platform in 2021. Stablecoins are "designed to be pegged to a 'stable' reserve asset like the U.S. dollar or gold" and "to reduce volatility relative to unpegged cryptocurrencies" (Joint Stipulation of Facts ("Jt. Stip.") ¶ 6).

Between February 13, 2022 and May 9, 2022, Claimant bought $83,579.01 worth of UST on Respondent's platform.[1] Respondent charged Claimant approximately $0.41 in fees relating to her UST transactions. Claimant sold the UST on various cryptocurrency exchanges for $3,042.31, resulting in a loss of $80,536.70.

**Claims**

Claimant alleged that Respondent is liable for her losses under the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and provisions of the California Corporate Code ("Cal. Corp. Code"). Specifically, she alleged that Respondent violated:

- §§ 5(a) and 5(c) of the Securities Act by offering and selling UST, an unregistered security, for which she has a right of action under §12(a)(1) of the Securities Act (First Cause of Action);

- §§ 5 and 15(a)(1) of the Exchange Act by entering into contracts while operating as an unregistered exchange, broker, or dealer and requiring her to pay transaction fees on her UST orders, for which she has a right of action under §29(b) of the Exchange Act (Second and Third Causes of Action);

- §§ 5 and 15(a)(1) of the Exchange Act by inducing her to enter into contracts to purchase UST through its promotion, solicitation, offering and selling of UST while operating as an unregistered exchange, broker, or dealer, for which she has a right of action under §29(b) of the Exchange Act (Fourth and Fifth Causes of Action);

---

[1] Claimant alleged in the Demand that Respondent offered and sold UST and "wLUNA" to her, but there was no evidence submitted, or argument made, that Claimant transacted in wLUNA on Respondent's platform.



- §§ 25110 and 25130 of the Cal. Corp. Code by offering and selling UST, an unqualified security, for which Respondent is liable under Cal. Corp. Code § 25503 (Sixth Cause of Action); and

- § 25210 of the Cal. Corp. Code by facilitating the sale of UST to her in exchange for fees while operating as an unlicensed broker-dealer, for which she has a right of action under Cal. Corp. Code § 25501.5(a)(1) (Seventh Cause of Action).

**Discussion**

The parties dispute whether UST is a "security" under applicable law. The law is unsettled as to whether a stablecoin such as UST, standing alone as it did on Respondent's platform, constitutes a security.[2]

### 1. Securities Act Claims

Assuming *arguendo* that the UST Claimant bought on Respondent's platform was a security, Respondent is not liable for Claimant's losses because it was not a statutory seller of UST within the meaning of Securities Act § 12(a)(1).

Section 12(a)(1) provides a private right of action for violations of § 5 of the Securities Act where there is a buyer-seller relationship. *Pinter* v. *Dahl*, 486 U.S. 622, 642 (1988). Under *Pinter*, a party is regarded as a statutory seller if it: (1) passed title or other interest in the security to a purchaser for value; or (2) successfully solicited the purchase of the security, motivated at least in part to serve its own financial interests or those of the owner of the security. *Pinter*, 486 U.S. at 642, 647.

Respondent's February 1, 2022 User Agreement ("UA," RX I)[3] provides that no title or other ownership interest passed between Claimant and Respondent:

---

[2] *See, e.g., SEC* v. *Terraform Labs Pte. Ltd.*, 2023 WL 4858299, *12 (S.D.N.Y. July 31, 2023) ("*Terraform I*") ("where a stablecoin is designed exclusively to maintain a one-to-one peg with another asset, there is no reasonable basis for expecting that the tokens – if used as stable stores of value … would generate profits through a common enterprise. So, **in theory**, the tokens, if taken by themselves, **might not** qualify as investment contracts") (emphasis added); *SEC* v. *Coinbase, Inc., et al.*, 2024 WL 1304037, *13 (S.D.N.Y. March 27, 2024) (involving a selection of tokens, which were not stablecoins, and explaining that "[t]he appropriate question … is whether transactions in which **a particular token** is implicated qualify as investment contracts" (emphasis added) (citations omitted). In *Terraform I* and *SEC* v. *Terraform Labs Pte. Ltd.*, 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023), the court analyzed whether UST was a security in the context of investors' potential to earn yield by staking their UST on the Anchor Protocol or converting it to LUNA. Respondent did not offer the Anchor Protocol or list native LUNA on its platform (R. Brief 23; Jt. Stip. ¶ 39). Respondent listed wLUNA, which is "not LUNA, but a separate token designed to track LUNA's value" (Jt. Stip. ¶ 9; *see* n. 1).

[3] The parties raised issues relating to differing versions of the user agreement. Claimant pointed to language relating to the identity of the seller in a user agreement dated January 31, 2019 ("2019 UA,"



> Title to Digital Assets shall at all times remain with you and shall not transfer to Coinbase ... None of the Digital Assets in your Digital Asset Wallet are the property of, or shall or may be loaned to, Coinbase; Coinbase does not represent or treat assets in User's Digital Asset Wallets as belonging to Coinbase.

(RX I, §2.6.1; *see also* RX 2).[4] The UA also provides that, "[w]hen you buy or sell Digital Assets on the Coinbase Site, you are not buying Digital Assets from Coinbase or selling Digital Assets to Coinbase. Coinbase acts as the agent, transacting on your behalf, to facilitate that purchase or sale between you and other Coinbase customers" (RX I, §3.2).[5] The UA further provides that, "[y]ou control the Digital Assets held in your Digital Asset Wallet" (RX I, § 2.6.2).[6] As such, Respondent is not a statutory seller under the first prong of *Pinter*.

Respondent also is not a statutory seller under the second prong of *Pinter* because the evidence does not establish that Respondent successfully solicited Claimant to purchase UST. While "a person can solicit a purchase, within the meaning of the Securities Act, by promoting the sale of a security in a mass communication" (*Pino v. Cardone Cap., LLC*, 55

---

CX 57) (Cl. Brief 19). Respondent argued that the relevant user agreement is the one dated December 15, 2022 ("December UA," CX 10) because Claimant invoked the December UA to commence this arbitration (R. Brief 7, n. 4). The 2019 UA pre-dated Claimant's purchase of UST by more than 3 years, while the December UA post-dated Claimant's last UST transaction by more than 7 months (*see* CX 53, RX K). Claimant accepted the UA on February 6, 2022, one week before she first bought the UST at issue (RX G). Both the UA and the December UA provide that the agreements may be amended, but amendments will not apply retroactively (CX 10, RX I). Accordingly, the UA governs Claimant's substantive claims. Notwithstanding this, however, the UA and the December UA contain substantially similar terms regarding ownership, title, and transacting parties (*see* CX 10, RX I).

[4] In *Oberlander* v. *Coinbase Global, Inc., et al.*, 2024 WL 1478773, *4 (2d Cir. Apr. 5, 2024), the Second Circuit did not resolve issues of title and privity under Respondent's user agreement because the district court had not properly assessed which version of the agreement applied.

[5] Claimant argued that similar language in the December UA constituted an impermissible "back-door waiver[] of the securities laws" (Cl. Brief 19). The authority Claimant cites (15 U.S.C. §§ 77n, 78cc(a), and *McMahan & Co.* v. *Wherehouse Ent. Inc.*, 65 F.3d 1044 (2d Cir 1995)) is inapposite. The language in the UA and the December UA does not waive or limit Claimant's rights to bring claims under the securities laws, but rather, it establishes the mechanics and properties of the transactions in which she could opt to engage.

[6] Claimant's argument that Respondent was a statutory seller of UST because it was structured as a centralized exchange and/or because it stored assets in omnibus wallets (Cl. Brief 18-19, 23; Cl. Reply 7-8) eviscerates the unambiguous terms that Claimant accepted before buying the UST. These arguments also are inconsistent with Claimant's reasoning regarding Respondent's status as an exchange or broker dealer.



F.4th 1253, 1258-59 (9th Cir. 2022), *citing Wildes* v. *BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022)), the solicitor "must '**urge or persuade**' another to buy **a particular security**." *Wildes*, 25 F.4th at 1346 (emphasis added) (citations omitted).[7]

Claimant attested that she consulted two "information pages" on Respondent's website, which led her to believe UST and wLUNA were safe investments, and she also was led to believe UST was stable because Respondent identified it as a stablecoin (CX 3, ¶¶ 8, 9). One of the "information pages" Claimant cited contained pricing information about UST and general instructions about how to purchase UST and other crypto assets on Respondent's platform (CX 3, ¶ 8; CX 50). The other page provided information about LUNA (CX 3, ¶ 8; *see* n. 1, 2). Claimant attested that she also consulted other "publicly available materials" and read several articles, without identifying the authors, titles, or sources (*see* CX 3).

Claimant did not attest to any other solicitation by Respondent, but she argued in her submission that Respondent posted various articles and announcements, which constituted solicitation (Cl. Brief 10-11, 21; Cl. Reply 9-10). None of the materials Claimant cited, however, focused only on UST, except for one "price chart" (CX 66). The cited materials either did not mention UST at all (*see, e.g.,* CX 44, 47, 48, 67), or they referenced UST and other crypto assets in the same posting and in the same manner (*e.g.*, announcing the launch of UST and three other crypto assets (CX 42, 43), listing fees for stable pairs involving UST and fees for stable pairs involving various other assets (CX 45, 46), describing competition in the stablecoin market, including a discussion of UST and other stablecoins (CX 35), and describing stablecoins with only one mention of UST, together with "RAI," and "FRAX," as examples of seigniorage algorithmic stablecoins (CX 49)). Even assuming *arguendo* that Claimant reviewed and considered these materials, they are insufficient to establish that Respondent was urging or persuading any customer to purchase UST. *See Houghton* v. *Leshner*, 2023 WL 6826814, *3-4 (N.D. Cal. Sept. 20, 2023) (describing the nature of the solicitation in *Pino* as "touting the investments and rates of return").[8]

Accordingly, Claimant's Securities Act claims fail and her First Cause of Action is denied.

---

[7] *See Houghton* v. *Leshner*, 2023 WL 6826814, *4 (N.D. Cal. Sept. 20, 2023) (Ninth Circuit applies broader standard than the Second Circuit as it does not require solicitation to be "direct"). *Cf. Underwood* v. *Coinbase Global, Inc., et al.*, 654 F.Supp.3d 224, 238-39 (S.D.N.Y. 2023) (collecting cases where plaintiffs were required to show "direct and active participation in the solicitation" and that they purchased securities as a result of such solicitation), *aff'd in part, rev'd in part* (*other grounds*), *Oberlander*, 2024 WL 1478773; *see also Risley v. Universal Navigation Inc., et al.*, 2023 WL 5609200, **18-19 (S.D.N.Y Aug. 29, 2023).

[8] *Cf. Underwood*, 654 F.Supp.3d at 239 (types of activities "that courts, applying *Pinter's* second prong, have held insufficient to establish active solicitation by a defendant" includes, *e.g.*, describing tokens and their value proposition, participating in direct promotions designed to increase trading volume, providing pricing updates, and linking to stories about the tokens), *aff'd in part, rev'd in part* (*other grounds*)*, Oberlander,* 2024 WL 1478773; *see also Risley,* 2023 WL 5609200 at 18-19.



### 2. Exchange Act Claims

Section 29(b) of the Exchange Act provides a private right of action for violations of §§ 5 and 15(a). The only remedy available under § 29(b) is rescission of the contract under which the party transacted. 15 U.S.C. § 78cc(b). Even assuming *arguendo* that Claimant can establish Respondent violated §§ 5 and 15(a)(1), Respondent is not liable for Claimant's losses because Claimant cannot establish a right to rescind the UA under § 29(b).

To establish a right to rescission under § 29(b), Claimant must show that: (1) the contract involved a prohibited transaction; (2) she is in contractual privity with Respondent; and (3) she is within the class of persons that the Exchange Act was designed to protect.[9] *See Berckeley Inv. Group, Ltd*. v. *Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006); *EMA Financial, LLC* v. *Vystar Corp., Inc.*, 2021 WL 1177801, *2 (S.D.N.Y. Mar. 29, 2021) (citations omitted), *recons. den.*, 2021 WL 5998411 (S.D.N.Y. Dec. 20, 2021).

To satisfy the first of these criteria, a party must show that the contract itself was illegal, not simply that there was an unlawful transaction or series of transactions pursuant to the contract. *See Acuitas Capital, LLC* v. *Ideanomics, Inc.*, 2023 WL 4373314, *1 (S.D.N.Y. Jun. 21, 2023) ("under Section 29(b), 'only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts'"), *citing EMA Fin., LLC* v. *AppTech Corp.*, 2022 WL 4237144, *6 (S.D.N.Y. Sept. 13, 2022) *quoting Zerman* v. *Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y.), *aff'd*, 672 F.2d 901 (2d Cir. 1981)); *EMA Financial* v. *TPT Global Tech, Inc.*, 2023 WL 7043227, *5 (S.D.N.Y. Oct. 26, 2023); *see also NexPoint Diversified Real Estate Trust* v. *Acis Capital Management, L.P., et al.*, 80 F.4th 413, 421-22 (2d Cir. 2023) (harmonizing *EdgePointCap. Holdings, LLC* v. *ApothecarePharmacy, LLC,* 6 F.4th 50 (1stCir. 2021) and *Reg'l Props., Inc.* v. *Fin. & Real Est. Consulting Co.*, 678 F.2d 552 (5th Cir. 1982)).

The UA was not an illegal contract. It did not require Claimant to buy or sell UST, or any other asset, on Respondent's platform. Rather, it set forth the terms that would apply if Claimant opted to transact on Respondent's platform. *See Acuitas*, 2023 WL 4373314 at *1 (contract "permitted, but it did not mandate," plaintiff to engage in particular transactions and thus, the agreement "is not an inherently unlawful contract subject to rescission under Section 29(b)"); *see also Oberlander*, 2024 WL 1478773 at *4; *Williams* v. *Binance, et al.*, 96 F.4th 129, 144-45, n. 8 (2d Cir. 2024) (explaining that "the Terms of Use did not commit Plaintiffs to making a violative transaction" as they "did not commit Plaintiffs to making any trades at all on Binance's platform; the Terms simply outlined the governing rules if Plaintiffs did choose to trade," without deciding whether a § 29(b) rescission claim can be stated based on violative transactions made pursuant to, but not required by, the contract).

Even if Claimant could establish that the UA was an illegal contract or that violative transactions were sufficient to establish a right to rescission under § 29(b), the UA still may

---

[9] For purposes of this analysis, it is assumed that Claimant is within the class of persons that the Exchange Act was designed to protect.



not be rescinded because Claimant lacked privity of contract with Respondent as the seller of the UST in view of UA §§ 2.6.1, 2.6.2, and 3.2.

Accordingly, Claimant's Exchange Act claims fail and her Second, Third, Fourth, and Fifth Causes of Action are denied.

### 3. State Law Claims

Claimant proffered no unique evidence, argument, or authority with respect to her claims under California law, beyond citations to the statutes.[10] Rather, Claimant referenced her analysis of her federal law claims (*see* Cl. Brief 25, Cl. Reply 15). For the reasons set forth above regarding the Securities Act and Exchange Act claims, Respondent is not liable for claims under Cal. Corp. Code §§ 25110, 25103, or 25503 or under Cal. Corp. Code § 25501.5(a)(1) for claims under Cal. Corp. Code § 25210.[11]

Accordingly, Claimant's state law claims fail and her Sixth and Seventh Causes of Action are denied.

**Award**

Claimant's claims are dismissed. The administrative fees of the American Arbitration Association, totaling $2,500.00, and the compensation of the Arbitrator, totaling $16,900.00, shall be borne as incurred.

This Award is in full settlement of all claims submitted in this Arbitration.

May 21, 2024

_____
Deborah A. Shapiro, Arbitrator

---

[10] In a footnote, Claimant also cited 15 U.S.C. § 78cc(b) as a comparison to Cal. Corp. Code § 25501.5 (Cl. Brief 24-25, Cl. Reply 15).

[11] In view of the foregoing, Respondent's limitations period arguments need not be addressed.